**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **ANDI GJOCI**, *et al.*,<br><br>*Plaintiffs,*<br><br>v.<br><br>**DEPARTMENT OF STATE**, *et al.*,<br><br>*Defendants.* | Case No. 1:21-cv-00294-RCL |

## **MEMORANDUM OPINION**

Plaintiffs are individuals hoping to receive a diversity visa, a document that will permit them to travel to a port of entry and request permission to enter the United States. *See Gomez v. Trump*, 485 F. Supp. 3d 145, 158 (D.D.C. 2020); 8 U.S.C. § 1201(h). They were selected out of a highly competitive lottery and, by statute, will remain eligible to receive a visa until September 30, 2021. *See Almaqrami v. Pompeo*, 933 F.3d 774, 776–77 (D.C. Cir. 2019). In this case, plaintiffs accuse defendants—federal government entities charged with administering the diversity visa program—of unlawfully suspending diversity-visa processing. *See, e.g.*, ECF No. 1 ¶ 391, 393. They filed their complaint on February 1, 2021. *Id.* at 1.

Defendants concede that—at the time the complaint was filed—diversity visa applications were not being processed. *See* ECF No. 20 at 12. But *after* the complaint was filed, the regime for processing diversity visas changed. On February 24, 2021, President Biden revoked former-President Trump's Presidential Proclamations on which the suspension of visa processing was based. *See* Proclamation No. 10149, 86 Fed. Reg. 11,847 (Feb. 24, 2021). Defendants then began processing diversity visas again under new guidance that they say is aimed at protecting the health and safety of their employees and managing resources during the ongoing COVID-19 pandemic.

1

*See, e.g.*, ECF No. 20 at 19; ECF 20-1 at 11, 15. And while the parties dispute whether defendants' pandemic guidance from 2020 (called "Diplomacy Strong" and "Mission Critical") still governs plaintiffs' application processing, *see, e.g.*, ECF No. 20 at 22; ECF No. 22 at 19, it is not disputed that diversity visa applications are *currently* being processed, ECF No. 22 at 8, 24–27.

Despite these changes, on April 11, 2021, plaintiffs moved for a "preliminary and/or permanent injunction" asking the Court to declare unlawful or enjoin defendants' policies that resulted in the suspension of the program. ECF No. 6. They argue that preliminary relief is necessary because the fiscal year deadline to process these applications (September 30) is approaching. *E.g.*, *id.* at 15. They also propose additional or alternative equitable remedies, like tolling of the September 30, 2021 statutory deadline. *Id.* at 28–31.

\* \* \* \* \*

A plaintiff's request for preliminary injunctive relief must mirror the allegations and relief sought in the complaint. *See De Beers Consol. Mines v. United States*, 325 U.S. 212, 220 (1945) ("A preliminary injunction is [] appropriate to grant intermediate relief *of the same character* as that which may be granted finally." (emphasis added)). As another member of this Court explained, "a proper motion for a preliminary injunction seeks to enjoin *the action that the complaint alleges is unlawful* prior to the completion of the litigation, and without such a connection between the claim and requested injunction, there is simply no jurisdictional basis for the Court to grant preliminary relief." *Bird v. Barr*, No. 19-CV-1581, 2020 WL 4219784, at \*2 (D.D.C. July 23, 2020) (collecting cases).

Applying these principles, the Court must **DISMISS WITHOUT PREJUDICE** plaintiffs' motion for a preliminary injunction. The complaint's theory of harm is explicit: defendants "suspended" the diversity visa program for the 2021 fiscal year by "unlawfully implement[ing] the

Proclamations and the [Immigration and Nationality Act] to preclude the issuance of *any* [diversity] visa while the Proclamations and Diplomacy Strong Framework are in effect." ECF No. 1 ¶ 391 (emphasis added). Indeed, the complaint has scores of references to the "suspension" of the diversity visa program, *see, e.g., id.* ¶¶ 356, 391, 393, which is alleged to be "ongoing," *id.* ¶ 385. But the theory on which plaintiffs now base their preliminary-injunction motion is different—plaintiffs acknowledge that diversity visas are being processed, *see, e.g.*, ECF No. 22 at 26–27, but argue that the current processing rate is insufficient so it must be governed by the challenged policies, ECF No. 6 at 9–10. They also allude to the lingering harm from the former suspension of diversity visa processing. *See,* ECF No. 22 at 21, 29. The "disconnect between the underlying claims in the lawsuit and the alleged basis for preliminary relief" is glaring. *Bird*, 2020 WL 4219784, at *3.

The Court is instructed by the Supreme Court's analysis in cases that involve alterations to the challenged legal regime after the suit is initiated. In *N.Y. State Rifle & Pistol Assoc., Inc. (NYSRPA) v. City of New York*, 140 S. Ct. 1525 (2020), the Court not only declined to consider a challenge to a repealed restriction on firearms transportation (which was moot), but it also declined to consider the parties' dispute about whether the subsequent *new rule* might still infringe the petitioners' rights. *Id.* The Court explained that

> in instances where the mootness is attributable to a change in the legal framework governing the case, and where the plaintiff may have some residual claim under the new framework that was understandably not asserted previously, our practice is to vacate the judgment and remand for further proceedings in which the parties may, if necessary, amend their pleadings or develop the record more fully.

*Id.* (quoting *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 482–483 (1990) (internal citations omitted). Similarly, the Court in *Fusari v. Steinberg*, 419 U.S. 379 (1975), vacated and remanded

3

a district court's decision in light of major changes to the challenged statutory framework. *Id.* at 390. The Court did so because (1) the changes had the potential to "*alter significantly* the character of the system considered by the District Court," *id.* at 386–87 (emphasis added); (2) it was unclear how the new procedures would operate, *id.* at 388–89; and (3) the Court was "unable meaningfully to assess the issues in th[e] appeal on the present record," *id.* at 387.

The parties dispute whether this case is moot, but the Court need not reach the issue of mootness today. Defendants have "alter[ed] significantly" the character of the diversity visa processing regime because processing has resumed. *Id.* at 386. The complaint contains no allegations as to why the current regime—in which some visa processing is ongoing—is inadequate. This makes sense considering that these factual developments transpired after the complaint was filed. But the mismatch between the request for injunctive relief and the complaint complicates the Court's ability to "meaningfully [] assess" plaintiffs' entitlement to injunctive relief. *Id.* at 387. To the extent that plaintiffs are *really* bringing a "residual claim," concerning the former suspension of diversity visa processing, *NYSRPA*, 140 S. Ct. 1525 (citation omitted), these harms are not contemplated in the complaint—which was filed before processing resumed. If plaintiffs want to challenge lingering harms or the current processing regime, they must amend their complaint. *See Bird*, 2020 WL 4219784, at *2.

For these reasons, the Court will **DISMISS WITHOUT PREJUDICE** the motion for a preliminary or permanent injunction by separate Order.

Date: 6/21/21

Royce C. Lamberth
United States District Judge

4