UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**ANDI GJOCI**, *et al.*,

    *Plaintiffs,*

v.

**DEPARTMENT OF STATE**, *et al.*,

    *Defendants.*

Case No. 1:21-cv-0294-RCL

### MEMORANDUM ORDER

    This Order is the latest installment in a long-running dispute between the plaintiffs, selectees for the "diversity visa" program whose eligibility for a visa expired in September 2021, and defendants Secretary Antony Blinken and the Department of State. Before the Court are the defendants' Motion to Dismiss or, in the alternative, for Summary Judgment, ECF No. 40, and the plaintiffs' Motion for Leave to File Supplemental Briefing, ECF No. 50. These motions were originally filed in 2021. The contours of this dispute shifted significantly due to two recent developments: the D.C. Circuit's opinion in *Goodluck v. Biden*, 104 F.4th 920 (D.C. Cir. 2024), and its opinion of the same date affirming this Court's denial of the plaintiffs' motion for a preliminary injunction, which drew heavily from *Goodluck*. With the latest guidance from the D.C. Circuit, the time has now come to resolve both motions. The defendants' motion to dismiss is **GRANTED** because this dispute is now moot, and the plaintiffs' motion for leave to file supplemental briefing is **DENIED**.

### I. BACKGROUND

    The facts underlying this dispute have already been recounted by this Court, *see Gjoci v. Dep't of State ("Gjoci I")*, No. 21-cv-0294-RCL, 2021 WL 3912143, at *1–5 (D.D.C. Sept. 1, 2021), and by the D.C. Circuit, *see Gjoci v. Dep't of State ("Gjoci II")*, No. 21-5256, 2024 WL

1

3159878, at *1 (D.C. Cir. June 25, 2024). The Court will therefore presume some familiarity with the circumstances of the case and restate only the essential facts.

The "diversity visa" program, as provided by the Immigration and Nationality Act, enables aliens from countries with low rates of immigration to the United States to apply for a visa. 8 U.S.C. § 1153(c). A certain number of applicants are randomly selected each fiscal year. *Id.* § 1153(e)(2). Once selected, the selectee must submit documentation, including a DS-260 form, to become eligible for a visa number, which the State Department uses to ensure that it does not grant more than the legally allotted number of diversity visas it may issue each year. 9 Foreign Affairs Manual ("FAM") 502.6-4(c)(2)(C)–(d)(1)(B). Selectees also submit other supporting documents, which are reviewed for completeness, consistency, and signs of fraud. 9 FAM 502.6-4(d)(1)(B). After a selectee's documents are reviewed and approved, the documentarily qualified applicant must then wait for their number to become current under the State Department Visa Bulletin. 9 FAM 502.6-4(c)(1)(B). Once the applicant has been notified that their number is current, he must schedule and attend an interview with a consular officer, who decides whether the selectee meets the criteria to obtain a diversity visa. 9 FAM 502.6-4(d)(2). If the selectee passes their interview, the State Department issues a diversity visa to the applicant.

Once an applicant has been randomly selected, he has only until the end of the fiscal year to proceed through each of the preceding steps and obtain a visa. 8 U.S.C. § 1153(e)(2). The fiscal year-end deadline is an uncompromising one: "Under no circumstances may a consular officer issue a visa or other documentation to an alien after the end of the fiscal year during which an alien possesses diversity visa eligibility." 22 C.F.R. § 42.33(a)(1). "In other words, 'when midnight strikes at the end of the fiscal year, those applicants without visas are out of luck.'" *Goodluck*, 104 F.4th at 925 (quoting *Yung-Kai Lu v. Tillerson*, 292 F. Supp. 3d 276, 282 (D.D.C. 2018)).

Due to the onset of the COVID-19 pandemic, the State Department suspended routine visa services—including diversity visa processing—at all embassies and consulates, pursuant to the agency's own guidance and its interpretations of three Presidential Proclamations issued by the Trump administration. *See generally Gomez v. Trump*, 485 F. Supp. 3d 145, 160–64 (D.D.C. 2020) (recounting the relevant history of the State Department's visa processing policies during COVID-19 and the effects of the Presidential Proclamations); 85 Fed. Reg. 23,441 (Apr. 22, 2020) (detailing Presidential Proclamation 10014); 85 Fed. Reg. 38,263–67 (June 22, 2020) (detailing Presidential Proclamation 10052); 86 Fed. Reg. 417 (Dec. 31, 2020) (detailing Presidential Proclamation 10131). Diversity visa processing resumed in early 2021 after President Biden revoked these proclamations. Mot. to Dismiss 5–6. However, even after processing resumed, the operational disruptions of the pandemic resulted in a massive backlog of visa applications, of which the State Department was only able to process a small fraction. *Id.* at 6–7.

The plaintiffs are diversity visa applicants and their families who were selected for fiscal year 2021, which began on October 1, 2020. Opp'n to Mot. to Dismiss 6, ECF No. 42; *see Gomez*, 485 F. Supp. 3d at 159 (noting that the fiscal year ends on the last day of September). By February 1, 2021, no plaintiff had been scheduled for a visa interview, which led them to initiate this action. Compl. ¶ 369, ECF No. 1. On June 30, 2021, the plaintiffs moved for a preliminary injunction, asking the Court to order the State Department either to promptly adjudicate their pending DS-260 applications or implement a policy expediting the processing of those applications, or alternatively to "exercise . . . the Court's equitable powers" to "preserve the visa eligibility of the Plaintiffs for the duration of this litigation . . . ." Mot. for Prelim. Inj. 1, ECF No. 35. This Court denied that motion in an opinion and order dated September 1, 2021, holding that the plaintiffs had not shown a sufficient likelihood of standing to challenge either the State Department's rescinded or then-

current visa processing policies, and that their challenges to the rescinded policies were also moot. *See Gjoci I*, 2021 WL 3912143, at *9–16. Shortly thereafter, the fiscal year came to an end on September 30, 2021. There is no indication that any plaintiff's diversity visa application was processed by the end of the fiscal year.

The plaintiffs appealed this Court's denial of their motion for a preliminary injunction to the D.C. Circuit on October 30, 2021. ECF No. 55. The D.C. Circuit affirmed on June 25, 2024, holding that at least one of the plaintiffs had standing and had articulated claims that were not moot, but that the plaintiffs had not established a likelihood of success on the merits because the Court lacked the equitable discretion to grant their requested relief. *See Gjoci II*, 2024 WL 3159878, at *2–3. The D.C. Circuit's opinion was informed by *Goodluck v. Biden*, published the same day, which decided unequivocally that "the remedy sought by the plaintiffs," namely that the court "preserve visa eligibility and reserve visas past the end of the fiscal year for which eligibility was granted . . . falls outside of a district court's authority . . . ." *Id.* at *3 (citing *Goodluck*, 104 F.4th at 925).

With the preliminary injunction motion now conclusively resolved, the Court turns its attention to the defendants' Motion to Dismiss or, in the alternative, for Summary Judgment, ECF No. 40. The plaintiffs have filed a response, Opp'n to Mot. to Dismiss, ECF No. 42, to which the defendants have replied, Defs.' Reply, ECF No. 43. Also pending is the plaintiffs' Motion for Leave to File Supplemental Briefing, ECF No. 50, to which the defendants have responded, Opp'n to Mot. for Supplemental Briefing, ECF No. 52. Both motions are ripe for the Court's review.

## II. LEGAL STANDARDS

### A. Rule 12(b)(1)

A motion for dismissal based on mootness "goes to the jurisdiction of th[e] court," *Mine Reclamation Corp. v. FERC*, 30 F.3d 1519, 1522 (D.C. Cir. 1994), and is therefore "properly

brought under Federal Rule of Civil Procedure 12(b)(1)." *Friends of Animals v. Salazar*, 670 F. Supp. 2d 7, 11 (D.D.C. 2009).  For the same reason, a 12(b)(1) motion is also the proper procedural vehicle for challenging a plaintiff's standing to sue. *Johnson v. Dist. of Columbia*, 71 F. Supp. 3d 155, 158 (D.D.C. 2014).

A plaintiff has standing if his allegations satisfy Article III's "irreducible constitutional minim[a]": 1) an injury in fact, that is 2) causally connected to the defendant's challenged conduct, and which 3) would likely be redressed by a favorable decision of the court. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).  A case becomes moot if and when, in the course of a dispute, "'the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'" *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013)).  "[A] case 'becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party.'"  *Id.* (quoting *Knox v. Serv. Emps. Int'l Union, Loc. 1000*, 567 U.S. 298, 309 (2012)).

When evaluating a Rule 12(b)(1) challenge, a court must accept all the non-movant's factual allegations as true. *Hill v. Smoot*, 308 F. Supp. 3d 14, 18 (D.D.C. 2018) (citing *Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 164 (1993)).  However, because the Court has an obligation to independently assure itself of its subject-matter jurisdiction, the plaintiff's allegations "'will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a [Rule] 12(b)(6) motion for failure to state a claim." *Grand Lodge of Fraternal Ord. of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13–14 (D.D.C. 2001) (quoting 5A Charles A. Wright & Arthur R. Miller, Fed. Prac. & Proc. § 1350 (2d ed. 1987)).

### B. Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) requires dismissal of an action when a plaintiff fails to plead facts that, if accepted as true, suffice to state "a claim . . . that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and "upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The plaintiff must allege enough to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court considering a 12(b)(6) motion to dismiss must accept the factual allegations in the complaint as true for purposes of the motion but need not accept "[t]hreadbare recitals of the elements of a cause of action" or credit naked legal conclusions advanced by the plaintiff. *Id.* "A court may *sua sponte* dismiss a cause of action for failure to state a claim where it is clear that the plaintiff has no possibility of obtaining relief." *U.S. Gov't ex rel. Stephenson v. Powell*, No. 18-cv-927-TJK, 2018 WL 11472407, at *1 (D.D.C. Aug. 24, 2018) (citing *Simpkins v. D.C. Gov't*, 108 F.3d 366, 370 (D.C. Cir. 1997)).

## III. ANALYSIS

### A. Plaintiffs' Claims for Equitable Relief Are Moot due to *Goodluck*

As discussed above, the plaintiffs initially asked this Court to preserve their visa eligibility beyond the end of fiscal year 2021. *Gjoci II* clarified that, at the time of their complaint, at least one plaintiff had standing to press this claim for relief. Specifically, plaintiff Sudip Pun had shown that he had suffered a substantially reduced likelihood of having his visa adjudicated (an injury in fact), that his injury was traceable to the defendants' policies (causation), and that *if* the Court had equitable discretion to require the State Department to process visas after the end of the fiscal year, a favorable decision by the Court would redress his injury (redressability). *Gjoci II*, 2024 WL 3519878, at *2. The D.C. Circuit also held that the plaintiffs' claims were not moot because, even though the challenged policies had been rescinded, they retained a "'legally cognizable interest in

6

the outcome' of this case in the form of the potential relief of an order requiring processing of their visa applications." *Id.* at *3 (quoting *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 396 (1980)).

However, as the D.C. Circuit also recognized in *Gjoci II*, its contemporaneous decision in *Goodluck* ended any debate about the availability of the plaintiffs' requested form of relief. Reflecting on *Goodluck*, *Gjoci II* stated that this Court "lack[s] equitable discretion to extend diversity-visa eligibility or reserve visas past the end of the fiscal year." *Id.* at *3.

*Goodluck* also helpfully reiterates the principle, relevant here, that "arguments about 'the legal availability of a certain kind of relief' go to the merits—not mootness—unless the remedy is 'so implausible that it is insufficient to preserve jurisdiction.'" *Goodluck*, 104 F.4th at 927 (quoting *Almaqrami v. Pompeo*, 933 F.3d 774, 781 (D.C. Cir. 2019)). In other words, the availability of a certain form of relief may be "a merits question in [one] context," but a jurisdictional question in another. *See Almaqrami*, 933 F.3d at 781.

When the D.C. Circuit considered the plaintiffs' motion for a preliminary injunction in *Gjoci II*, the availability of their requested relief was uncertain, and was therefore a merits issue. But now, with the benefit of the D.C. Circuit's opinions in *Gjoci II* and *Goodluck*, this uncertainty has been definitively resolved. It is now "implausible" that the Court could preserve the plaintiff's visa eligibility, so the remedy they seek has become "insufficient to preserve jurisdiction." *Id*. The plaintiffs themselves seem to acknowledge this reality. *See* Joint Status Report of August 27, 2024, ECF No. 62 (noting that *Goodluck* "would conclusively resolve some of Plaintiffs' causes of action" if en banc review were denied, as it has been, *see Goodluck v. Biden*, No. 21-5263, 2024 WL 4092894 (D.C. Cir. Sept. 3, 2024)). Their claim is straightforwardly moot as a result.

**B. Plaintiffs Lack Standing to Pursue Their Other Requested Forms of Relief**

Although they concede that *Goodluck* precludes their preferred form of relief, the plaintiffs maintain that other forms of relief are still available to them. Specifically, they argue that they are entitled to: 1) a declaration that the defendants have acted in bad faith and that their alleged plan to "run out the clock" on the 2021 fiscal year was unlawful, *ultra vires*, arbitrary, and capricious; 2) nominal damages; and 3) an injunction ordering the defendants to adjudicate their pending DS-260 applications. *See* Joint Status Report at 2. They seek an opportunity to file supplemental briefing to address these arguments (although they have not formally moved for it). *Id.*[1] These ancillary forms of relief, however, are not sufficient grounds to maintain this lawsuit, and ordering supplemental briefing on them would merely prolong the inevitable. Their request will therefore be denied.

First, a claim for declaratory relief cannot provide an independent basis for jurisdiction where the Court would otherwise lack one. "The statute granting the United States District Courts' the power to issue declaratory judgments did not expand their jurisdiction, which is still limited to resolving only actual cases and controversies." *All. for Glob. Just. v. Dist. of Columbia*, No. 01-cv-811-PLF/JMF, 2006 WL 2303105, at *2 (D.D.C. Aug. 9, 2006) (citing *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950)); *see also Swan v. Clinton*, 100 F.3d 973, 976 n.1 (D.C. Cir. 1996) ("[T]he declaratory judgment statute does not constitute an independent grant of jurisdiction . . . .") (citing *Skelly Oil*, 339 U.S. at 672)).

Next, perhaps knowing that declaratory relief on its own cannot sustain this lawsuit, the plaintiffs couple it with a claim for nominal damages. The plaintiffs rely on *Uzuegbunam v.*

---

[1] The plaintiffs' latest post-*Goodluck* request for supplemental briefing, contained in the parties' Joint Status Report of August 27, 2024, is different from the plaintiffs' 2021 motion for leave to file supplemental brief, which the Court resolves below.

8

*Preczewski*, in which the Supreme Court held that "a request for nominal damages satisfies the redressability element of standing where a plaintiff's claim is based on a completed violation of a legal right." *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 802 (2021). But this case is readily distinguishable from *Uzuegbunam*, in which the plaintiffs—college students who were prevented from distributing religious literature in their college campus's "free speech zone,"—had clearly articulated a violation of their First Amendment rights. *Id.* at 796–797. Here, by contrast, the "legal right" on which the plaintiffs base their complaint is no right at all: selectees of the diversity visa program "have nothing resembling a substantive entitlement to such visas." *Goodluck*, 104 F.4th at 928; *see also Nishihata v. Blinken*, No. 21-cv-2173-CKK, 2021 WL 4476750, at *6 (D.D.C. Sept. 30, 2021) (holding that diversity visa selectees "receive[] the opportunity to *apply* for a visa, not a *right* to receive one") (emphasis in original); *Almaqrami*, 933 F.3d at 780 ("Because diversity visas expire when the selection FY ends, . . . plaintiff[s] do[] not have a statutory right to the requested visa and the government does not have a duty to issue [them] one.") (internal citations omitted).[2]

Finally, plaintiffs continue to seek an order requiring the State Department to process their pending DS-260 applications. But the plaintiffs submitted their DS-260 forms in connection with their diversity visa applications, and their eligibility for these visas "expired on September 30, 2021 . . . ." *Gjoci II*, 2024 WL 3159878, at *3. The plaintiffs' request, therefore, is somewhat befuddling. It is not clear whether the plaintiffs are asking the Court to order the State Department

---

[2] The only other theory on which the defendants could potentially establish a completed violation of a legal right is that, by implementing visa processing policies allegedly inconsistent with the INA, the defendants failed to "administer the DV Program in a timely manner and the way Congress mandated" and thus violated the Administrative Procedure Act. This theory, too, is unavailing. A plaintiff cannot establish an injury in fact based on "an abstract 'interest in the proper administration of the law.'" *Jeffries v. Volume Servs. Am., Inc.*, 928 F.3d 1059, 1064 (D.C. Cir. 2019) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 497 (2009)). Even if the Court were to determine that the State Departments' policies were arbitrary, capricious, *ultra vires*, or otherwise unlawful, it could not reinstate the plaintiffs' visa eligibility. The plaintiffs therefore possess only an abstract interest in the administration of the diversity visa program, the frustration of which cannot constitute a completed violation of a legal right.

to resolve their DS-260s favorably *despite* their ineligibility, or if they are simply asking for the State Department to finish ministerially processing their applications, knowing full well that they will inevitably be denied due to ineligibility. If the former, their requested relief is plainly off-limits: it goes without saying that the Court may not order the State Department to favorably adjudicate a visa application submitted by an ineligible applicant in defiance of all statutory and regulatory directives. *Yung-Kai Lu*, 292 F. Supp. 3d at 282–83 ("[N]unc pro tunc processing of [a] Diversity Visa application after the relevant fiscal year . . . is statutorily barred."). If the latter, plaintiffs equally lack standing for their request, because an order to process a doomed visa application could not possibly redress any injury claimed by the plaintiffs.

In sum, because the plaintiffs' alternative forms of relief either are beyond the Court's power to grant, would not redress the plaintiffs' injuries, or rest on an alleged violation of a "right" that does not exist, they lack standing to pursue any of them. With no form of relief available to the plaintiffs, the case must be dismissed.

### C. The Motion for Leave to File Supplemental Briefing Is Denied

Only the plaintiffs' motion for leave to file supplemental briefing remains. In that motion, filed on October 3, 2021, the plaintiffs seek to update the Court on "intervening factual and legal developments that bear directly on some of the issues underlying" the defendants' motion to dismiss. Mot. for Suppl. Briefing 1. Specifically, the defendants wish to update the Court on the end of the 2021 fiscal year, and to apprise the Court of certain decisions in this District declaring various facets of the State Department's visa processing policies unlawful. By now, the Court is of course aware of the passage of the 2021 fiscal year and its implications for the plaintiffs' visa eligibility. And in light of *Goodluck*, the cases cited by the defendants in this motion no longer have any bearing on this now-moot dispute. Because this motion only evinces an intent to brief

factual and legal developments the relevance of which have long since passed, and in light of the fact that the case will now be terminated, it is denied.

## IV. CONCLUSION

For the foregoing reasons, and upon consideration of the parties' motions and entire record herein, it is hereby

**ORDERED** that the defendants' Motion to Dismiss is **GRANTED**; and it is further

**ORDERED** that the plaintiffs' Motion for Leave to File Supplemental Briefing is **DENIED**; and it is further

**ORDERED** that, in light of dismissal having been granted, this dispute is hereby **DISMISSED** and **TERMINATED** on the dockets of this Court.

Date: September 23, 2024

Royce C. Lamberth
United States District Judge